# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                        NEWS RELEASE #021

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **1st day of May, 2018**, are as follows:


**PER CURIAM**:


2017-B-2153          IN RE: LIONEL LON BURNS

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Lionel Lon Burns, Jr., Louisiana Bar Roll number 25352, be and he hereby is suspended from the practice of law for a period of one year. It is further ordered that respondent attend and successfully complete the next available session of the Louisiana State Bar Association's Ethics School. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

CLARK, J., dissents for the reasons given by Justice Genovese.
HUGHES, J., dissents and assigns reasons.
GENOVESE, J., dissents and assigns reasons.

05/01/18

SUPREME COURT OF LOUISIANA

NO. 2017-B-2153

IN RE: LIONEL LON BURNS

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Lionel Lon Burns, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**[1]

In July 2013, respondent began representing the defendants in a civil case captioned *Ultimate Entertainment LLC v. Marcel Morton and Down South Entertainment LLC*, pending before Judge Michael Mentz in the 24th Judicial District Court for the Parish of Jefferson. Judge Mentz scheduled a pre-trial conference for September 4, 2013. Respondent was unable to attend the pre-trial conference and sent his paralegal, Randy Tucker, to the conference instead. Mr. Tucker never advised court personnel or opposing counsel that he was not an attorney. Instead, Mr. Tucker participated in the conference and later engaged in settlement discussions with opposing counsel in the presence of Judge Mentz' law clerk.

At a subsequent October 8, 2013 contempt hearing, respondent insisted that Mr. Tucker had identified himself as a non-lawyer to court personnel. Respondent's

---

[1] The formal charges against respondent originally consisted of two counts of misconduct. The ODC informed the court at oral argument that it has abandoned Count II of the formal charges. Considering the ODC's representation, we will not discuss this count further.

statement was contradicted by court personnel and opposing counsel, and respondent did not call Mr. Tucker to testify in rebuttal even though Mr. Tucker was present for the contempt hearing. Following the contempt hearing, Judge Mentz found respondent in direct contempt of court for sending a non-lawyer to a lawyers-only pre-trial conference with the apparent intention of negotiating a settlement. Judge Mentz also fined respondent $100.

After Judge Mentz filed a disciplinary complaint against respondent, respondent provided the ODC with a sworn statement regarding the matter. During the sworn statement, respondent indicated that his sole purpose in sending Mr. Tucker to the pre-trial conference was to obtain a continuance. Respondent also indicated that he sent Mr. Tucker to the conference with a motion to continue bearing respondent's signature to present to Judge Mentz. However, Mr. Tucker denied that respondent provided him with such a motion, and court personnel indicated that no such motion was ever presented for filing.

The ODC alleged that respondent's conduct violated Rules 5.5(a) (a lawyer shall not practice law in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so) and 8.4(a) (violation of the Rules of Professional Conduct) of the Rules of Professional Conduct.

### DISCIPLINARY PROCEEDINGS

In August 2016, the ODC filed formal charges against respondent. Respondent answered the formal charges, denying any misconduct. The matter then proceeded to a formal hearing on the merits.

*Formal Hearing*

The hearing committee conducted the formal hearing in December 2016. Both the ODC and respondent introduced documentary evidence and called several

witnesses to testify before the committee. Respondent also testified on his own behalf and on cross-examination by the ODC.

*Hearing Committee Report*

Following the formal hearing in this matter, the hearing committee summarized the relevant testimony as follows:

Judge Mentz testified that he did not know respondent or Mr. Tucker prior to presiding over the *Ultimate Entertainment* case. He also testified that, in addition to Mr. Tucker, attorney Adam Lambert and attorney Chelsea Dazet, both of whom were counsel for the plaintiff, attended the September 4, 2013 pre-trial conference. Judge Mentz' law clerk, Jean Tiemann, was also present. Judge Mentz recalled that Mr. Tucker and Mr. Lambert engaged in settlement discussions and discussed trial exhibits during the pre-trial conference. Furthermore, during the pre-trial conference and a subsequent telephone conference, Judge Mentz believed Mr. Tucker was an attorney with respondent's office. He only learned Mr. Tucker was not an attorney after Mr. Lambert later informed his office of this fact. Judge Mentz then searched the Louisiana State Bar Association member list for Mr. Tucker's name. He also questioned his entire staff and found no evidence that Mr. Tucker had given any of them a business card or personally identified himself as a paralegal during the pre-trial conference. After confirming that Mr. Tucker was not an attorney, Judge Mentz scheduled a contempt hearing against respondent. When respondent offered no evidence that Mr. Tucker had identified himself as a paralegal, Judge Mentz fined respondent. Finally, Judge Mentz indicated that he would have rescheduled the pre-trial conference if he had known that Mr. Tucker was a paralegal.

Ms. Tiemann, Judge Mentz' law clerk, confirmed that she was present during the September 4, 2013 pre-trial conference, which lasted ten to fifteen minutes. She testified that she brought Mr. Tucker into the conference room and that settlement

of the case was discussed during the pre-trial conference. Ms. Tiemann had never met Mr. Tucker prior to the pre-trial conference and was certain that he did not give her a business card or indicate he was not an attorney when he appeared for the pre-trial conference. Instead, Mr. Tucker told Ms. Tiemann that he was representing the defendant and that he was there for respondent because someone was ill. She also indicated that Mr. Tucker participated in a subsequent telephone conference with Judge Mentz, during which pretrial matters were discussed. She learned that Mr. Tucker was not an attorney when Mr. Lambert later called to inform her, and she passed the information on to Judge Mentz. Finally, Ms. Tiemann testified that Judge Mentz would not have conducted the pre-trial or telephone conferences had he known Mr. Tucker was not an attorney.

Mr. Lambert, who represented the plaintiff in the *Ultimate Entertainment* case, testified that he could not recall speaking with or meeting respondent prior to September 24, 2013. Up until then, Mr. Lambert had communicated multiple times with Mr. Tucker, whom he mistakenly believed was respondent's associate. He also could not recall meeting Mr. Tucker prior to the *Ultimate Entertainment* case. Regarding the September 4, 2013 pre-trial conference, Mr. Lambert indicated that Mr. Tucker said respondent was ill and he was there in respondent's place. Mr. Lambert also recalled that the pre-trial conference lasted fifteen to twenty minutes and the merits and settlement of the case were discussed in Judge Mentz' presence. Mr. Lambert further indicated that Mr. Tucker participated in a subsequent telephone conference with him and Judge Mentz on September 20, 2013. Mr. Lambert did not learn Mr. Tucker was a paralegal until he received a fax cover sheet attached to a motion to continue prepared by respondent. He then contacted Judge Mentz' office to inform them Mr. Tucker was not an attorney. Finally, Mr. Lambert indicated that he believed Mr. Tucker was an attorney because Mr. Tucker negotiated settlement

4

of the case, discussed evidence, witnesses, and the trial, and referred to the defendants as his clients.

Ms. Dazet, who is Mr. Lambert's co-counsel in the *Ultimate Entertainment* case, testified that Mr. Tucker introduced himself to her at the September 4, 2013 pre-trial conference. Mr. Tucker told her he was at the conference on respondent's behalf and then participated in the conference. Ms. Dazet believed Mr. Tucker was an attorney because of his appearance, introduction, and active participation in the pre-trial conference. Ms. Dazet did not learn Mr. Tucker was a paralegal until Mr. Lambert forwarded her respondent's fax cover sheet on September 21, 2013.

Deidre Peterson, an attorney and respondent's former co-worker, testified that she introduced Mr. Tucker, who worked for her as a paralegal until 2005, to Mr. Lambert on many occasions prior to 2005 while Mr. Lambert was a law clerk for Judge K. K. Norman. The committee noted, however, that Mr. Lambert did not corroborate Ms. Peterson's testimony.

Mr. Tucker testified that he has been respondent's paralegal since 2008. He indicated that respondent expects him to always identify himself as a paralegal. He also indicated that he hands out business cards identifying himself as a paralegal to new acquaintances and the courts, as respondent requires him to do. Furthermore, he stated that respondent does not allow him to engage in settlement negotiations. Regarding the September 4, 2013 pre-trial conference, Mr. Tucker recalled that respondent called him that morning and instructed him to go to Judge Mentz' courtroom and inform the judge respondent could not attend the conference because of illness. Respondent did not tell Mr. Tucker to handle the conference himself or discuss the case with opposing counsel. When he went to Judge Mentz' office, he identified himself as respondent's paralegal and presented his business card to a clerk wearing eyeglasses and asked her to inform Judge Mentz that respondent was ill. He was then led to the conference room where he informed Mr. Lambert and

Ms. Dazet of respondent's illness. According to Mr. Tucker, when Judge Mentz entered the conference room, Mr. Lambert informed him of respondent's illness, which Mr. Tucker then confirmed, and Judge Mentz said, "ain't nothing we can do," got up, and ended the conference. He also testified that he identified himself as a paralegal to Judge Mentz and that the conference lasted two minutes. Mr. Tucker did not recall Ms. Tiemann being present for the conference and did not recall participating in an actual pre-trial conference or settlement discussions.

Lynn Newby, Judge Mentz' civil clerk, testified that she was present in Judge Mentz' office on September 4, 2013 and that Mr. Tucker did not give or hand her anything on that day. In contrast to Mr. Tucker's testimony that he gave his business card to a uniformed female in Judge Mentz' office, Ms. Newby also testified that the criminal clerk with whom she shares an office is male and that the other female members of Judge Mentz' staff do not wear uniforms.

Respondent testified that he met Mr. Tucker through attorney Deidre Peterson, Mr. Tucker's former employer, and has employed Mr. Tucker as a paralegal since 2006 or 2007. Respondent stated that he instructed Mr. Tucker not to participate in pre-trial conferences in his absence and that, on September 4, 2013, he specifically instructed Mr. Tucker to "go down, inform the Court I am sick, get the next date, and give me a call." Several times during his testimony, respondent stated he was sick and unable to attend the September 4, 2013 pre-trial conference before Judge Mentz. However, the ODC offered as impeachment evidence the September 4, 2013 docket master printouts and transcripts of two criminal matters in Orleans Parish Criminal Court that indicate respondent made appearances on that day before Judge Robin Pittman on behalf of defendants Melvin Terrance and Ronald Marshall. At first, respondent denied making these two appearances. Then he testified that he had no idea he had made court appearances in Orleans Parish Criminal Court on September 4, 2013 until the ODC provided him evidence of same.

6

He later explained that his previous inconsistent statements and testimony resulted from confusion and forgetfulness and that he was able to get up, pull himself together, appear on these cases, and go back home.

Iain Dover, an assistant district attorney in the Orleans Parish District Attorney's office, testified that he was the attorney for the state in *State of Louisiana v. Melvin Terrance*. Mr. Dover indicated he spoke to respondent on the telephone about the case on September 3, 2013, and respondent never indicated he was ill or unable to appear for the trial scheduled for the next day. Mr. Dover then testified that respondent appeared in court on September 4, 2013 to represent Mr. Terrance at the trial. That day, respondent never told Mr. Dover he was having health issues that might cause him problems with moving forward with the case. Respondent also showed no signs of having a cold, flu or other health problems.

After considering this testimony and the other evidence presented at the hearing, the committee found that Mr. Tucker appeared on respondent's behalf and participated in the September 4, 2013 pre-trial conference before Judge Mentz without identifying himself as a paralegal. The committee also found that respondent facilitated and assisted Mr. Tucker in the unauthorized practice of law. Additionally, the committee found that respondent was not ill or unable to attend the September 4, 2013 pre-trial conference and that he attended a criminal trial in *State of Louisiana v. Melvin Terrance* on the same day in Orleans Parish Criminal Court. Finally, the committee found that respondent knowingly misrepresented material facts with the intent to deceive.

Based on these findings, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the baseline sanction is suspension. In aggravation, the committee found the following: a dishonest or selfish motive, submission of false evidence, false statements, or other

7

deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 1998). In mitigation, the committee recognized two factors: the absence of a prior disciplinary record and the imposition of other penalties or sanctions.

After also considering this court's prior jurisprudence addressing similar misconduct, the committee recommended respondent be suspended from the practice of law for two years, with 364 days deferred, followed by two years of supervised probation with the conditions that he attend Ethics School and refrain from violating the Rules of Professional Conduct during the probationary period, in default of which the deferred portion of the suspension will be made immediately executory.

Respondent filed an objection to the hearing committee's report.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings were supported by the record; however, the board clarified that the criminal trial in *State of Louisiana v. Melvin Terrance* attended by respondent on September 4, 2013 was continued at the request of the State. Based on these facts, the board determined respondent violated Rules 5.5(a) and 8.4(a).

The board determined respondent knowingly violated a duty owed to the legal profession by assisting his paralegal in the unauthorized practice of law. This conduct caused actual harm in that Judge Mentz had to expend additional time conducting the contempt hearing.

Turning to the issue of an appropriate sanction, the board felt that respondent's violation of Rule 5.5(a) was less significant than his deceptive and dishonest testimony. The board agreed with the committee that respondent was not ill on September 4, 2013 when he was scheduled to attend the pre-trial conference before

Judge Mentz. Instead, his obligations in other client matters prevented him from attending the pre-trial conference. The board noted that respondent initially testified he was sick and at home the entire day on September 4, 2013, but his testimony changed when the ODC confronted him with docket master sheets in two criminal matters indicating he appeared in Orleans Parish Criminal Court on September 4, 2013. The committee found this to be a knowing misrepresentation by respondent, which the board determined is supported by the record.

In aggravation, the board found the following factors: a prior disciplinary record (an admonition in 2006 and 2007), a dishonest or selfish motive (with respect to the misrepresentation discussed above), submission of false evidence, false statements, or other deceptive practices during the disciplinary process, and substantial experience in the practice of law. In mitigation, the board found the imposition of other penalties or sanctions and the remoteness of prior offenses.

After further considering this court's prior jurisprudence addressing similar misconduct and in light of respondent's false statements during the disciplinary proceedings, the board recommended respondent be suspended from the practice of law for one year and one day. One board member dissented and would recommend a one-year suspension, arguing that to require respondent to apply for reinstatement would be "unnecessary and unduly onerous given the unique facts of this matter."

Both respondent and the ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has

9

been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

After hearing the evidence, the hearing committee made a factual finding that respondent's paralegal, Mr. Tucker, appeared on respondent's behalf and participated in the September 4, 2013 pre-trial conference before Judge Mentz without identifying himself as a paralegal. The committee also found that respondent facilitated and assisted Mr. Tucker in the unauthorized practice of law. Additionally, the committee found that respondent was not ill or unable to attend the September 4, 2013 pre-trial conference and that he attended a criminal trial on the same day in Orleans Parish Criminal Court.

The disciplinary board found the record supports the committee's findings. Based on our review, we agree these findings are not clearly wrong. Accordingly, there is clear and convincing evidence that respondent violated Rules 5.5(a) and 8.4(a) of the Rules of Professional Conduct.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

We find that respondent acted knowingly. He violated duties owed to the legal profession, causing actual harm. The baseline sanction for this type of misconduct is suspension. The aggravating and mitigating factors found by the board are supported by the record.

Considering all the circumstances of this case, we find the appropriate sanction in this matter is a one-year suspension from the practice of law. We will further order that respondent attend and successfully complete the next available session of Ethics School.

## DECREE

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Lionel Lon Burns, Jr., Louisiana Bar Roll number 25352, be and he hereby is suspended from the practice of law for a period of one year. It is further ordered that respondent attend and successfully complete the next available session of the Louisiana State Bar Association's Ethics School. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

05/01/18

**SUPREME COURT OF LOUISIANA**

**NO. 2017-B-2153**

**IN RE: LIONEL LON BURNS**

**ATTORNEY DISCIPLINARY PROCEEDING**

**Hughes, J., dissenting.**

Respectfully, I would impose only a six month suspension.

05/01/18

**SUPREME COURT OF LOUISIANA**

**No. 2017-B-2153**

**IN RE: LIONEL LON BURNS**

**ATTORNEY DISCIPLINARY PROCEEDING**

**GENOVESE, J.,** dissents and would order a suspension from the practice of law for one year and a day with one year probation and ethics school.